**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

---

| | |
|---|---|
| TERESA BRAND, | NO. 16-cv-431 |
| Plaintiff, | |
| v. | |
| SAINT ELIZABETH'S HOSPITAL OF THE HOSPITAL SISTERS OF THE THIRD ORDER OF ST. FRANCIS and HOSPITAL SISTERS HEALTH SYSTEM, | **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |
| Defendants. | |

---

Plaintiff, TERESA BRAND, by and through her undersigned counsel, EISENBERG & BAUM, LLP, THOMAS E. KENNEDY, III and LAW OFFICES OF THOMAS E. KENNEDY, III, L.C., for her Complaint against Defendants, SAINT ELIZABETH'S HOSPITAL OF THE HOSPITAL SISTERS OF THE THIRD ORDER OF ST. FRANCIS and HOSPITAL SISTERS HEALTH SYSTEM, hereby alleges as follows:

## PRELIMINARY STATEMENT

1. Plaintiff Teresa Brand is a deaf individual who communicates primarily in American Sign Language ("ASL"), which is her expressed, preferred, and most effective means of communication. Born in Hinsdale, Illinois, Ms. Brand grew up in Downers Grove before settling in Peru, Illinois to raise her family. Active in the Illinois Deaf Community, Ms. Brand worked as a Deaf Service Coordinator for Illinois Valley Center for Independent Living, as a Teacher's Aide for the Deaf at Westmont Jr. High, and as an ASL instructor at the College of DuPage.

2. From April to mid-June of 2014 and in March and May of 2015, Ms. Brand sought medical treatment from St. Elizabeth's Hospital of the Hospital Sisters of the Third Order of St. Francis ("St. Elizabeth's Hospital") for physical therapy and for what was later diagnosed as External Hemorrhoid, Thromboned. During Ms. Brand's medical treatment at Defendants' facility, Defendants discriminated against her by failing and/or refusing to provide auxiliary aids and services to accommodate her disability, despite her repeated requests for effective communication.

3. Lip-reading, the ability to understand the speech of another by watching the speaker's lips, does not provide effective communication for most deaf and hard of hearing individuals. In fact, the upper limits of estimates for lip-reading accuracy, in an ideal one-on-one situation, have been as low as 10% to 30% of correct words. This is because only a small amount of the spoken sounds of aural language are visible, and many of those appear identical on the lips. Even if a primary ASL user were able to determine the sounds appearing on a speaker's lips, he or she would still not necessarily understand the English language or the speaker's vocabulary, because many deaf individuals, including Plaintiff, have difficulty acquiring and communicating in English. Despite this, Defendants often forced Plaintiff to communicate in a medical setting using this unreliable and ineffective method, instead of properly accommodating her disability through qualified ASL interpreters.

4. Video Remote Interpreting (VRI) is a videotelecommunication service that uses devices such as web cameras or videophones to provide sign language or spoken language interpreting services through a remote or offsite interpreter. VRI is inappropriate in many circumstances, including when the deaf user has other conditions that impair the deaf user's ability to utilize the device (i.e., if the deaf user has a visual impairment, is in a lot of pain, or cannot

achieve the proper posture); when there are many people in a room; when staff is inadequately trained to set up or operate the device; or in situations that are especially complicated or emergent. Despite this, Defendants often forced Ms. Brand to utilize a nonfunctioning VRI, or to use VRI when it was not appropriate to do so, instead of properly accommodating her disability.

5. Teresa Brand brings this action to compel Defendants to cease unlawful discriminatory practices and implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity to participate in and benefit from Defendants' health care services. Plaintiff seeks declaratory and equitable relief; compensatory and punitive damages; and attorneys' fees and costs to redress Defendants' unlawful discrimination on the basis of disability in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

## THE PARTIES

6. Plaintiff TERESA BRAND brings this action and is an individual residing in Pueblo West, Colorado. Teresa Brand is a profoundly deaf individual who primarily communicates in American Sign Language, and she is substantially limited in the major life activities of hearing and speaking within the meaning of federal and state anti-discrimination laws.

7. Defendant, ST. ELIZABETH'S HOSPITAL OF THE HOSPITAL SISTERS OF THE THIRD ORDER OF ST. FRANCIS at all times hereinafter mentioned, is a corporation that has been licensed and doing business in Illinois with a principal place of business at 4936 LaVerna Road, Springfield, Illinois 62707-9456. Defendant owns, leases, and/or operates St. Elizabeth's Hospital, a hospital located at 211 South 3rd Street, Belleville, Illinois 62220. Defendant is a place of public accommodation under federal and state antidiscrimination laws and is a recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements, thus making

Defendant subject to the requirements of the Rehabilitation Act.

8. Defendant, HOSPITAL SISTERS HEALTH SYSTEM, at all times hereinafter mentioned, is a corporation that has been licensed and doing business in Illinois with a principal place of business at 4936 LaVerna Road, Springfield, Illinois 62707-9456. Defendant owns, leases, and/or operates St. Elizabeth's Hospital, a hospital located at 211 South 3rd Street, Belleville, Illinois 62220. Defendant is a place of public accommodation under federal and state antidiscrimination laws and is a recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements, thus making Defendant subject to the requirements of the Rehabilitation Act.

## JURISDICTION & VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under federal law.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the Defendants reside within the jurisdiction of this district, and a substantial part of the events that give rise to the claims occurred in this district.

## STATEMENT OF FACTS

11. Teresa Brand is a profoundly deaf individual who communicates primarily through American Sign Language (ASL).

12. Teresa Brand requires auxiliary aids and services to communicate effectively in a medical setting.

13. From April 21, 2014 to June 12, 2014, Ms. Brand received physical therapy for the treatment of Degenerative Spinal Joint Disease as well as for arthritis in her knees and shoulders from St. Elizabeth's Hospital's physical therapy services.

14. During this period, Ms. Brand attended approximately 10 physical therapy sessions

at St. Elizabeth's Hospital.

15. Despite Ms. Brand's repeated requests, St. Elizabeth's Hospital failed to provide Ms. Brand with any auxiliary aids or services for all physical therapy appointments she attended between April and June of 2014.

16. Without the aid of a qualified interpreter, Ms. Brand was unable to adequately understand the treatment she received during these appointments.

17. On or about March 24, 2015, Ms. Brand sought treatment at Defendants' St. Elizabeth's hospital, Emergency Room Services, for significant pain and discomfort related to her gastrointestinal tract.

18. Ms. Brand was suffering from severe hemorrhoids, which caused her extreme gastrointestinal distress due to her resultant inability to defecate over a three-day period.

19. Plaintiff's gastrointestinal distress was so extreme that it also rendered her unable to eat or drink over that same three-day period and caused her extreme pain.

20. Upon examining her, Defendants' hospital staff informed Ms. Brand she would need surgery, but she would have to schedule an appointment with a specialist for the surgery.

21. During this visit, Ms. Brand was provided with a VRI device.

22. However, the VRI device froze numerous times, making it an ineffective form of communication for Ms. Brand.

23. After the St. Elizabeth's Hospital physician treating Ms. Brand left, a nurse returned with her discharge papers as well as an appointment time with the specialist for her surgery, scheduled for later that same day.

24. Rather than attempt to communicate with Ms. Brand, the nurse spoke to Ms. Brand's personal assistant ("PA"), turning away from Ms. Brand so that the nurse was not facing

her and Ms. Brand was unable to understand what was said.

25. Soon after leaving the St. Elizabeth's Hospital's Emergency Room, the specialist's office called Ms. Brand to inform her that her appointment with the specialist for surgery had to be cancelled because a sign language interpreter was not available.

26. Less than two hours later, the specialist's office again called Ms. Brand and informed her that the specialist was going to be at the hospital where he could utilize the hospital's VRI device, and asked Ms. Brand to arrive at the hospital within 20 minutes.

27. Teresa Brand utilizes a wheelchair and is unable to drive.

28. As Ms. Brand had to arrange for transportation to the hospital, she was not able to make the appointment with the specialist for surgery when given such brief notice.

29. The following day, on or about March 25, 2015, the specialist's office again contacted Ms. Brand and informed her that she had an appointment for 4 p.m. that afternoon.

30. That same day, when Ms. Brand's PA arrived at her home, she found Ms. Brand writhing on the floor in extreme pain and so contacted 911.

31. Ms. Brand was transported to St. Elizabeth's Hospital's Emergency Services, where she saw a staff physician who informed her that she could see the specialist, as scheduled, at 4 p.m., despite the fact that Ms. Brand was in such severe pain she could barely move.

32. A VRI device was not provided during this exchange.

33. Instead, hospital staff provided Ms. Brand with a pen and paper and attempted to communicate with her in writing, until 4 p.m., when the specialist arrived.

34. Once the specialist arrived, a VRI device was provided.

35. However, again the VRI device froze constantly, causing further delays in communication between Ms. Brand and St. Elizabeth's Hospital staff and forcing Ms. Brand to

continue to write notes back and forth with hospital staff, including the specialist.

36. Throughout Ms. Brand's treatment, the specialist attempted to communicate with Ms. Brand by screaming at her, screaming so loudly that everything he communicated was heard in the hallway, outside of Ms. Brand's hospital room, meaning anyone who passed could hear the details of Ms. Brand's private medical information.

37. Additionally, after the surgery was completed, the VRI device was taken out of Ms. Brand's room and she was once again forced to communicate with St. Elizabeth's Hospital staff solely by writing notes.

38. Once discharged, Ms. Brand realized the gauze used to stop the bleeding resulting from her surgery had fallen off. As she was continuing to bleed from the surgery, Ms. Brand had to contact the Emergency Room at St. Elizabeth's Hospital on or about March 26, 2015, at approximately 3 a.m., in order to learn how to treat herself.

39. Staff at St. Elizabeth's Hospital asked Ms. Brand if, upon discharge, she had been provided with gauze pads. Ms. Brand had not.

40. Throughout Teresa Brand's physical therapy treatment and medical treatment, up to and including her discharge from St. Elizabeth's Hospital, Ms. Brand had little to no understanding of her medical condition, the tests she underwent and the medication she received, or of instructions for her follow-up care, due to Defendants' failure and/or refusal to provide effective auxiliary aids and services to accommodate her disability.

41. Defendants did not, at any point, provide Ms. Brand with adequate auxiliary aids and services to enable her to effectively communicate with Defendants' staff.

42. In most instances, effective communication could not have taken place without the aid of a qualified ASL interpreter.

43. Additionally, the VRI device experienced technical difficulties that essentially rendered its use meaningless.

44. Teresa Brand was constantly in the dark about her medical condition due to Defendants' failure and/or refusal to provide effective auxiliary aids and services. Unable to effectively communicate, she experienced anxiety, humiliation, and emotional distress.

45. Defendants knew or should have known of their obligations under the Section 504 of the Rehabilitation Act to provide accommodations to individuals with disabilities, including individuals who are deaf or hard of hearing, and to develop policies to promote compliance with these statutes.

46. Defendants and their physicians and staff knew or should have known that their actions and/or inactions created an unreasonable risk of causing Ms. Brand greater levels of fear, anxiety, indignity, humiliation, and/or emotional distress than a hearing person would be expected to experience.

47. As a result of Defendants' failure to ensure effective communication with Ms. Brand, she received services that were objectively substandard and that were inferior to those provided to hearing individuals.

48. As a result of Defendants' failure to ensure effective communication with Ms. Brand, she was deprived of her right to understand her diagnosis and treatment, to provide informed consent, and to maintain privacy with regard to her medical information.

49. Defendants' wrongful and intentional discrimination against Ms. Brand on the basis of disability is reflected by the Defendants' failure to train employees and promulgate policies of non-discrimination against deaf individuals.

50. Defendants discriminated against Ms. Brand with deliberate indifference to her

communication needs, causing her to endure humiliation, fear, anxiety, and emotional distress.

### **CLAIM 1: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT**

51. Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

52. At all times relevant to this action, Section 504 of the Rehabilitation, 29 U.S.C. § 794, has been in full force and effect and has applied to Defendants' conduct.

53. At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to Defendants' conduct.

54. At all times relevant to this action, Plaintiff has had substantial limitations to the major life activities of hearing and speaking, and has been an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

55. At all times relevant to this action, Defendants have each been programs or activities receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

56. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

57. The Rehabilitation Act permits associational claims by extending relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2).

58. Defendants discriminated against Plaintiff, solely on the basis of disability, by denying her meaningful access to the services, programs, and benefits the Defendants offer to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of 29 U.S.C. § 794.

59. Plaintiff is therefore entitled to seek and recover compensatory damages for the injuries and loss she sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

60. Plaintiff is further entitled to an award of attorneys' fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Court grant the following relief:

a. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' policies, procedures, and practices have subjected Plaintiff to unlawful discrimination in violation of Section 504 of the Rehabilitation Act;

b. Award to Plaintiff:

  i. Compensatory damages pursuant to Section 504 of the Rehabilitation Act;

  ii. Reasonable costs and attorneys' fees pursuant to Section 504 of the Rehabilitation Act;

  iii. Interest on all amounts at the highest rates and from the earliest dates allowed by law;

  iv. Any and all other relief that this Court finds necessary and appropriate.

## JURY DEMAND

Plaintiff demands trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

Respectfully submitted,

EISENBERG AND BAUM, LLP

By:

/s/ Andrew Rozynski, Esq.

arozynski@EandBlaw.com

/s/ Eric M. Baum, Esq.
ebaum@EandBlaw.com

Attorneys for Plaintiff
Office and Post Office Address
24 Union Square East, Fourth Floor
New York, NY 10003
(212) 353-8700


LAW OFFICE OF THOMAS E. KENNEDY, III. L.C.

By: /s/ Thomas E. Kennedy

Thomas E. Kennedy, III, Esq.
Law Offices of Thomas E. Kennedy, III, L.C.
Attorney for Plaintiff
906 Olive St., Ste. 200
St. Louis, MO 63101
(314) 872-9041
(314) 872-9043 (fax)